**LOUISVILLE SAFETY COUNCIL, INC., et al., Appellants,**

v.

**Estel HACK, Appellee.**

Court of Appeals of Kentucky.

Nov. 18, 1966.

Rehearing Denied June 9, 1967.

James G. Bowman, Louisville, for appellants.

Josephine P. Hughett, Hughett, Hughett & Hughett, Raymond C. Stephenson, Louisville, for appellee.

DAVIS, Commissioner.

The Workmen's Compensation Board dismissed Estel Hack's claim for compensation on the ground that it was not timely filed. KRS 342.270(1). The circuit court reversed the Board's ruling and ordered the case remanded for an award of compensation on the merits. The employer and its insurance carrier appeal.

We relate the factual background as gleaned from the record. It is to be noted that no evidence to the contrary was offered by appellants.

Appellee sustained an injury to his back on May 19, 1959, in the course of his employment as executive secretary of the Louisville Safety Council. (Hereinafter Council.) In July of the same year he conferred with the president of the Council, former Governor Keen Johnson. Governor Johnson directed appellee to report the matter to the Vaughan Insurance Agency, the agency which had written the workmen's compensation insurance for the Council. Appellee did report to that agency and was directed from there to the office of two Louisville attorneys who served as adjusters for the compensation insurance carrier. He submitted an affidavit to the attorneys in which was outlined the history of his injury and subsequent medical attention he had received for it. The affidavit disclosed that the injury had been diagnosed as a herniated disc, but appellee was being treated by a chiropractor.

Appellee was away from his work duties for two or three weeks immediately following the injury, although after that time he

rendered part time service in his employment. Respecting appellee's employment and payment of salary to him by his employer Governor Johnson testified, in part:

"D35. And you sent him to the Vaughan Insurance Agency—for what purpose?

A. Well, for the purpose of—for the purpose of taking such steps as was necessary to obtain the compensation that he and the Safety Council were entitled to under our policy.

D36. Now, as I understand, the Safety Council, while you were president, paid him his full salary?

A. That's right. The cancelled checks are there to support that I am sure. I signed the checks, I signed all payroll checks.

D37. And you mentioned you sent him to Mr. Vaughan for the purpose of establishing his claim and the claim of the Safety Council?

A. That's right.

D38. And to what extent was the Safety Council's claim to be established?

A. Well, I don't recall the specific amount of money. What was it, $30 a week.

D39. This statute, I think, takes care of that, but any way, whatever it was, that's what you had in mind?

A. That's right."

The appellee testified that he discussed the situation with all of the directors of his corporate employer, and that he considered that the payment to him of his full salary was in lieu of workmen's compensation except to the extent that his salary exceeded sums payable as workmen's compensation. It is clear that Governor Johnson had the same understanding.

Appellee had been informed by a doctor that he would need an operation to obtain relief from the discomfort attendant upon his injury. Apparently appellee desired to avoid an operation if possible; he continued to have chiropractic treatments. He consulted with Mr. Vaughan of the Vaughan Insurance Agency to determine whether the insurance company would pay for the chiropractic treatments. He was advised that these bills would be paid by the insurance company, and they were so paid.

By June, 1962, some three years after the injury, appellee became reconciled to the fact that an operation would be required. He communicated with the attorney-adjuster about the pending operation, and was informed that the matter would be submitted to the home office of the insurance company. Subsequently the attorney-adjuster advised appellee to go ahead with the operation and that the incident expenses would be paid by the insurance company. The operation was performed and the attendant expenses were defrayed by the insurance carrier. It appears that appellee incurred other medical expenses after the operation, and that the bills for these were paid by the insurance company.

Appellee's post-operative progress was marked by his being bedfast at home for some 14 weeks, following which he was able to get about, first on crutches and then with the aid of a cane. After he was able to discard the cane appellee's doctors advised him that he had attained the maximum recovery possible, and gave him a percentage evaluation of his permanent disability.

Thereupon appellee told Mr. Vaughan what had been reported to him by his doctor, and suggested that the time had arrived to conclude a final settlement. Mr. Vaughan arranged an appointment between appellee and the attorney-adjuster. It was at that conference between appellee and the attorney-adjuster in June, 1963, that the latter informed appellee that the claim for compensation would not be paid because of the statute of limitation. The claim was not filed with the Workmen's Compensation Board until March 27, 1964.

It is at once apparent that the claim was not filed within the limitation period of one year; hence the Board's dismissal of the claim was correct unless some circumstance of record may be said to have tolled the statute. It is plain that the mere filing of the affidavit with the attorney-adjuster did not comply with the statutory requirement for timely filing of the claim with the Board. Cf. Morgan v. Kays Laundry & Cleaning Co., Inc., Ky., 332 S.W.2d 248.

KRS 342.270(1) provides,[1] in pertinent part:

"If the parties fail to reach an agreement in regard to compensation * * * either party may make written application to the board for a hearing in regard to the matter at issue * * *. Such application must be filed within one year after the accident, * * * or within one year after the cessation of voluntary payments, if any have been made."

We have held that the expression "voluntary payments" as used in the statute relates to payment of compensation, not medical bills. Cambron v. Co-Operative Distributing Company, Ky., 405 S.W.2d 687; Pipes Chevrolet Company v. Bryant, Ky., 274 S.W.2d 663; Miles v. General Electric Company, Ky., 280 S.W.2d 529. See 144 A.L.R. 606, et seq.

It is noted, however, that the statute refers to an "agreement" in regard to compensation. In its opinion the Board adverted to the matter of voluntary payments and disposed of it by writing:

"Limitation does not run from the time of injury complained of, where voluntary payments have been made, but it begins to run from the cessation of the voluntary payments. We find no proof in this record which would show that any one other than the Plaintiff understood that his salary payments would be considered as compensation payments."

■ We are unable to agree with that observation. The record demonstrates, as the Board noted, that the appellee so regarded the salary payments—but it also is shown that the Council, through Governor Johnson as well as the directors, so regarded the salary payments. Indeed there is no evidence in the record refuting the assertion of appellee that both he and his employer regarded the salary payments as *pro tanto* payments of compensation for which the Council should be reimbursed when the claim was ultimately settled. We regard the agreement between appellee and his employer as sufficient to satisfy the statute. Cf. Himyar Coal Corporation v. Gordon, 260 Ky. 709, 86 S.W.2d 702 and Little v. Persun Construction Co., Ky., 332 S.W.2d 647, 649. Payment of the medical bills was not payment of compensation but such payment of medical bills, coupled with the uncontradicted proof that the salary payments were to be regarded as compensation, readily distinguishes this case from Cambron v. Co-Operative Distributing Company, Ky., 405 S.W.2d 687 and cases of like import cited above. Since the Board's quoted finding is not supported by any evidence it is not conclusive upon the court.

■ Our decision here is not in conflict with Pospisil v. Miller, Ky., 343 S.W.2d 392; Burke v. Blair, Ky., 349 S.W.2d 836, or Cuppy v. General Accident Fire & Life Assurance Corp., Ky., 378 S.W.2d 629. Those cases recognize that in some instances an estoppel may foreclose assertion of the statute of limitation as a bar to a claim, but in them the facts did not warrant the application of such an estoppel. The limitation statute reflects the policy of the law favoring prompt filings of claims as opposed to prosecution of stale claims. Countervailing policies are present too. For example, it is recognized that the law favors amicable adjustment of disputes without litigation; voluntary agreements as to compensation are expressly sanctioned. Liberal

1. The statute was amended in 1964, but the effective date of the amendment was subsequent to the filing of the claim at bar.

application of the workmen's compensation act is proclaimed as 'a legislative policy. KRS 342.004. It would do violence to these latter policies of law to require a claimant to file his claim within a year of his injury despite the assurance of his employer that his salary payments are to be considered as compensation and in face of the continued and unquestioned payment of medical expenses during the entire limitation period and long after.

The judgment is affirmed.