**Sam MOORE, Appellant,**

**v.**

**SEAGRAVES COAL COMPANY et al.,
Appellees.**

Court of Appeals of Kentucky.

May 30, 1969.

G. E. Reams, John A. Doyle, Harlan, for appellant.

William A. Rice, Harlan, for appellees.

DAVIS, Commissioner.

The Workmen's Compensation Board dismissed Sam Moore's application for adjustment of compensation on the ground that the claim was barred by the statute of limitation. KRS 342.185. Upon appeal the circuit court affirmed the order of the Board, and from that ruling Moore appeals.

The accident giving rise to the claim occurred on April 12, 1965. The claim was not filed before the Board until August 23, 1967. Moore had received payments of weekly compensation from the insurance carrier of his employer for twenty-six weeks following the injury. These compensation payments ceased in October 1965.

KRS 342.185, so far as applicable here, provides in substance that a claim for workmen's compensation must be filed within one year after the date of the accident, or if compensation payments have been made voluntarily, within one year following the suspension of the voluntary payments. It is patent that the present claim was filed untimely within the proscription of KRS 342.185, unless there is some other reason why the statute is inapplicable.

In seeking reversal of the judgment, Moore contends that the running of the statute of limitation was tolled by reason of the voluntary payments of compensa-

tion, coupled with certain representations made to him by his employer. He also asserts that information was fraudulently concealed from him by his employer and its insurance carrier so that the running of the statute was tolled. Moore suggests that the factual finding of the Board is not conclusive in this type case.

Appellant relies on Louisville Safety Council, Inc. v. Hack, Ky., 414 S.W.2d 877, and Kentucky West Virginia Gas Company v. Spurlock, Ky., 415 S.W.2d 849, two recent decisions in which this court held that the factual situation resulted in a tolling of the running of the statute of limitation in workmen's compensation cases. In order to tell whether those decisions support appellant's position, we must examine the factual background in the case before us.

At the time of Moore's injury he was earning between $500 and $550 per month. E. B. Taylor, President of Seagraves Coal Company, Moore's employer, testified that he visited Moore shortly after the accident and told him, in part:

"You're a salaried man and you'll be drawing compensation and I'm going to try to give you approximately the money per week to make up what you did in salary, the difference between the compensation and make it up, and then when you're able to work, doing odd jobs, such as he worked as a watchman and in the lamphouse, that you can do some of that work for me. I did say, I said you'd probably get a settlement from the insurance company approximately a Thousand Dollars. I did make that statement to him."

Taylor said that the company paid Moore enough during the period of his temporary, total disability, when considered along with the voluntary compensation payments made by the insurance company, to permit him to receive about the same monthly income as he had earned before the accident.

In September 1965, Moore was assigned to some sedentary duties as a watchman. When the voluntary compensation payments were discontinued in October, Moore's salary was increased by the company sufficiently to maintain his earnings at the previous level. It is evident that Moore's employer regarded him as an unusually conscientious and capable employee and desired to retain him as an employee and "made work" for him in an effort to accomplish that end. Moore was able to assume duties other than as a watchman and at the time of the hearing was still employed by the company and earning more than he had earned before the accident.

The compensation checks which were paid to Moore were delivered by the insurance company to Seagraves, and Moore picked up the compensation checks each week as he would receive his check for wages from Seagraves. When asked about his conduct and reaction when the compensation checks were discontinued, Moore testified:

"I went to draw my pay, I always get my checks along with my pay and when I checked it, I didn't get it the pay day I drew. I asked the bookkeeper and he said it didn't come, and, so, I told Mr. Taylor about it and he said he'd take care of that, he'd raise my pay on up to take care of the compensation check."

Moore said that Taylor did just that. When asked more specifically as to what Taylor told him about workmen's compensation payments when the checks were discontinued, Moore said: "Yes, we talked about it and he said he would see about it for me, it wouldn't, he'd see that I wouldn't lose anything on it, the case, on the matter." There was no specific testimony by Moore that he had been assured by Taylor or any other officer or agent of Seagraves or Seagraves' insurance carrier that the salary payments were in lieu of compensation or that anyone was undertaking to act in Moore's stead in the matter of presenting or preserving his claim for workmen's compensation. Taylor specifically denied that he had ever undertaken to

"take care" of the compensation claim and added that he suggested to Moore that he should confer with Mr. Whitaker, the agent for Seagraves' insurance carrier, with regard to the compensation claim.

In Louisville Safety Council v. Hack, Ky., 414 S.W.2d 877, we pointed out that both the employer and the employee regarded salary payments made to the employee as being *pro tanto* payments for compensation for which the employer would be reimbursed when the claim was ultimately settled. It was upon that basis that we regarded that case as distinguishable from Pospisil v. Miller, Ky., 343 S.W. 392; Burke v. Blair, Ky., 349 S.W.2d 836; and Cuppy v. General Acc. Fire & Life Assur. Corp., Ky., 378 S.W.2d 629. In Kentucky West Virginia Gas Co. v. Spurlock, Ky., 415 S.W.2d 849, the employer continued to pay the regular wages of the injured employee during the period of his disability. In Spurlock, there was a contractual basis which we construed as making it obvious that the company's payments were in lieu of compensation and rightly so regarded by the employee. In the present case the circumstances are not the same. Here, the employer disclaimed having assured Moore that the wage payments were in lieu of compensation. Additionally, Moore resumed his duties more than on a "part-time" basis, as was the situation in Hack, and any "understanding" that the wages were in lieu of compensation was purely a unilateral one.

■ The Board directed that a hearing be had on the sole question of whether the limitation statute had been tolled, and after reviewing the evidence presented by the parties found as fact that no assurances to Moore by the employer or the insurance carrier, nor any circumstances in the relations of the parties, warranted Moore's assumption that his wages were being paid in *pro tanto* substitution for compensation. The decision on that factual issue by the Board is conclusive inasmuch as there was evidence upon which the Board could reasonably base the decision, and the evidence in behalf of Moore was not so overwhelming as to impel the Board to accept it.

■ The record is devoid of any substantive evidence supporting appellant's assertion that Seagraves or its carrier fraudulently concealed facts from him respecting his compensation rights, and we can find no merit in appellant's charge of error in this respect.

The judgment is affirmed.

All concur.